25-1054 (L)
*United States v. Greebel*

# Uniteδ States Court of Appeals
# For the Seconδ Circuit

---

August Term 2025
Argued: May 7, 2026
Decided: July 29, 2026

Nos. 25-1054 (Lead), 25-1361 (Con)

---

UNITED STATES OF AMERICA,

*Appellee*,

UNITED STATES DEPARTMENT OF THE TREASURY, INTERNAL REVENUE
SERVICE,

*Interested Party-Appellee,*

*v.*

EVAN GREEBEL,

*Defendant-Appellant*.*

---

Appeal from the United States District Court
for the Eastern District of New York

---

* The Clerk of Court is respectfully directed to amend the caption as set forth
above.

1

No. 15-cr-637-2, Kiyo A. Matsumoto, *Judge*.

Before:         PÉREZ and NATHAN, *Circuit Judge*s, and KATZMANN, *Judge*.†

Defendant appeals from the district court's order denying the parties' proposed stipulated orders of garnishment of the defendant's retirement accounts to enforce a criminal restitution order. The district court held that the parties' proposal—the product of a settlement between the defendant and the Government—exceeded the scope of this Court's prior mandate, and it directed that the funds be liquidated and distributed according to its own procedure. The district court also held, in denying the defendant's motion for a stay of the distribution, that the defendant lacks standing to challenge the distribution because his property interest in the funds transferred to the Government upon liquidation. We hold that (1) the case remains a live controversy notwithstanding the liquidation of the retirement accounts and (2) the Court's prior mandate does not bar approval of the parties' proposed stipulated orders of garnishment. **REVERSED.**

THOMAS R. PRICE (Varuni Nelson, Rachel G. Balaban, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern

---

† Judge Gary S. Katzmann, of the United States Court of International Trade, sitting by designation.

District of New York, Brooklyn, NY, *for* the United States of America, Appellee, and the United States Department of the Treasury, Internal Revenue Service, Interested Party-Appellee.

AKIVA SHAPIRO, Holtzman Vogel Baran Torchinsky & Josefiak PLLC, New York, NY (Marc Aaron Takagaki, Reed Brodsky, Gibson, Dunn & Crutcher LLP, New York, NY, *on the brief*), *for* Evan Greebel, Appellant.

———

NATHAN, *Circuit Judge*:

This appeal arises from the Government's efforts to garnish defendant Evan Greebel's 401(k) accounts to satisfy a criminal restitution order. In a prior appeal, we held that Greebel's accounts could be garnished, but we remanded for the district court to determine the extent of Greebel's interest in (and the Government's reciprocal ability to garnish) the accounts in light of the taxes he may owe for the early withdrawal.

On remand, rather than litigate the early withdrawal tax question, the parties purported to settle the dispute instead, submitting proposed stipulated orders of garnishment for the district

3

court's approval.

Nevertheless, in a pair of orders issued February 21, 2025, and April 10, 2025, the district court rejected the parties' proposal, reasoning that it violated this Court's mandate from the prior appeal. The district court did so despite the consent to the stipulated orders of garnishment of Greebel's victim to whom he owed restitution and the financial institutions that managed the 401(k) accounts. And in denying Greebel's subsequent motion for a stay of the distribution of his account funds to his victim, the district court also held that Greebel no longer has standing to pursue this litigation because the Government has taken over his property interest in the now-liquidated funds.

We hold that Greebel had standing to object to the garnishment of his 401(k) accounts, that the case has not since become moot upon the liquidation of those accounts, and that the district court erred in applying the mandate rule to bar the parties' proposed stipulated orders of garnishment. We thus reverse the district court's order and remand with instructions to approve the parties' proposed stipulated orders of garnishment.

## BACKGROUND

This appeal marks Greebel's third in this case, and the second concerning the garnishment of his retirement accounts. After a jury trial, Greebel was convicted of conspiracies to commit wire and securities fraud, based on a scheme he carried out with codefendant Martin Shkreli to defraud investors of Retrophin, Inc.—now called Travere Therapeutics, Inc. (Travere). As part of his sentence, Greebel was ordered to pay $10,447,979 in restitution to Travere. This Court

4

affirmed Greebel's conviction and sentence on direct appeal. *See United States v. Greebel*, 782 F. App'x 72, 74 (2d Cir. 2019) (summary order).

Later, to enforce the restitution order, the Government applied in the district court for writs of garnishment against two of Greebel's 401(k) accounts held at Charles Schwab & Co. (Charles Schwab) and Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch). Greebel objected, arguing that the accounts could not be garnished because he lacked a "current, unilateral right to receive payments" under their terms, and alternatively that the Consumer Credit Protection Act (CCPA) capped garnishment at 25 percent of the account funds because they constituted "disposable earnings." App'x 64–77. The district court overruled these objections, holding that garnishment of Greebel's 401(k) accounts was neither prohibited under the accounts' plan terms nor capped by the CCPA.

We agreed. *United States v. Shkreli*, 47 F.4th 65, 68 (2d Cir. 2022). Like the district court, we rejected Greebel's arguments that the 401(k) plan terms and the CCPA blocked or capped garnishment. *See id.* at 73–77. We also rejected two other arguments that had cropped up on appeal—that the Employee Retirement Income Security Act (ERISA)'s anti-alienation provision, 29 U.S.C. § 1056(d)(1), prohibited garnishment of Greebel's retirement funds, and that the early-withdrawal tax imposed by the Internal Revenue Code, 26 U.S.C. § 72(t), divested Greebel of a current, unilateral right to access the funds. *See id.* at 70–76. As to Section 72(t), though "[w]e agree[d] with the Government's contention that the ten-percent early withdrawal tax does not prevent it from garnishing the retirement funds," we

5

held also that the early-withdrawal tax, "if imposed, . . . would qualify as a limit on the defendant's right to payment of the balance of those funds." *Id.* at 75–76. Because the parties had not yet resolved whether the tax would apply, we remanded for the district court to "determine whether the Government's garnishment would trigger the ten-percent early withdrawal tax, and, if so, the amount subject to garnishment by the Government." *Id.* at 76. And if the parties failed to "provide clarity" on the question, we explained, "the district court may wish to direct the liquidation of the retirement account and order the clerk to reserve a portion of the funds in escrow for the potential additional tax consequences of the early withdrawal." *Id.*

Ultimately on remand, the parties filed proposed stipulated orders of garnishment of Greebel's 401(k) accounts. The proposed orders reflected the parties' settlement on a method for garnishing the funds—the 401(k) accounts would be liquidated, Charles Schwab and Merrill Lynch would withhold 40 percent to pay any tax consequences of the liquidation (with 31 percent allocated for federal taxes and 9 percent for state taxes), and the remaining 60 percent (plus any tax refund) would be paid to Travere. In exchange, Greebel agreed to pay any excess tax liability personally.

On February 21, 2025, the district court rejected the proposed stipulations, holding that they "ignore[d] the Second Circuit's Mandate and this Court's orders after remand by . . . failing to clarify whether Mr. Greebel will be subject to the ten-percent early withdrawal tax," and "exceed[ed] the scope of the Second Circuit's Mandate by proposing that [40 percent] of the cash value of Mr. Greebel's interests in the two retirement accounts . . . be paid toward

6

Mr. Greebel's unspecified federal and state tax liability[.]"  App'x 350–51.  The district court thus set a deadline for the liquidation of Greebel's accounts and asked the parties for briefing on whether the Section 72(t) early withdrawal tax would apply, clarifying that Greebel would be required to "litigate any other tax liabilities before the Tax Court[.]"  *Id.* at 353.  And the district court directed the parties to notify the victim, Travere, of the garnishment proceedings and of its right to be heard.  But the district court adjourned the deadline after the parties wrote back, again urging approval of the settlement and also raising a concern that the district court's approach would render Charles Schwab and Merrill Lynch liable under a provision of the Internal Revenue Code obligating a "payor" of an "eligible rollover distribution" to "withhold from such distribution an amount equal to 20 percent of such distribution."  *See* 26 U.S.C. § 3405(c)(1).

The parties, Charles Schwab, Merrill Lynch, and Travere responded by letter; none objected to the proposed stipulated orders of garnishment.  Greebel and the Government urged adoption of the settlement, which they argued was a fair and non-collusive resolution of their disagreement about the applicability and effect of the tax liabilities that would stem from liquidating the 401(k) accounts.  Charles Schwab and Merrill Lynch did not object to the settlement, either, insofar as it allowed them to reserve 20 percent of the liquidated funds to avoid violating Section 3405(c)(1).  Travere likewise did not object, on the belief that the settlement was reached to avoid Greebel, Charles Schwab, or Merrill Lynch from owing taxes

7

"exclusively [because of] the liquidation of [Greebel's] accounts[.]"[1] App'x 364.

The district court again rejected the parties' proposal, holding that it violated this Court's mandate. The district court ordered that Greebel's 401(k) accounts be liquidated, that Charles Schwab and Merrill Lynch withhold 20 percent of the funds to satisfy their obligations under Section 3405(c)(1), that the clerk further withhold 10 percent of the liquidated funds to pay any tax owed under Section 72(t), and that the remainder be distributed to Travere. Greebel timely appealed. In the meantime, the district court denied Greebel's motion for a stay of the distribution to Travere, reasoning that a stay, too, would violate this Court's mandate and that Greebel lacked standing because his 401(k) accounts had already been liquidated. This Court stayed the distribution pending appeal on November 13, 2025.

## DISCUSSION

The Mandatory Victim Restitution Act (MVRA) obligates district courts to order criminal restitution (or, the requirement that a convicted defendant compensate his victim) for a slew of listed offenses. *See* 18 U.S.C. § 3663A. The Government's options for enforcing a restitution order include garnishment (or, the court-ordered seizure of one's property held by another) as spelled out in the Fair Debt Collection Practices Act (FDCPA). *See* 18 US.C.

---

[1] Travere also proposed language to the proposed stipulated orders of garnishment clarifying that any tax refund generated by the liquidation of Greebel's 401(k) accounts be paid to it, rather than to offset "any other tax debt Mr. Greebel may owe." App'x 364–65.

§ 3613(a); 28 U.S.C. § 3205(a). Under the latter statute, the Government may apply to a district court for a writ of garnishment against a convicted defendant's property to be served on the garnishee (or, holder) of that property, who must file an answer to the writ; then, the defendant may file objections to the garnishee's answer. *See* 28 U.S.C § 3205(c). Because federal courts lack inherent power to order restitution, their authority in this area derives only from statute. *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013).

The last time this case reached the Court, we decided that at least some of Greebel's 401(k) funds may be garnished to satisfy his restitution order. *See Shkreli*, 47 F.4th at 68. On appeal now is the district court's choice between two methods of garnishing Greebel's 401(k) accounts: one proposed by the parties and consented to by the garnishees and victim, and another created by the district court.[2] The district court, concluding that the parties' agreement violated this Court's prior mandate, ordered garnishment using its own procedure. And in denying Greebel's motion for a stay of that order, the district court held that Greebel lacks standing to continue this litigation because his property interest in the now-liquidated 401(k) funds has transferred to the Government. We review the district court's legal rulings underlying these decisions—including its application of the mandate rule and its standing determination—*de novo*. *See Shkreli*, 47 F.4th at 70; *Knight v. City of New York*, 164 F.4th 173, 177 (2d Cir. 2026); *Burrell v. United States*, 467 F.3d 160, 163 (2d Cir. 2006).

---

[2] "An order of garnishment is final and appealable." *United States v. Liounis*, 179 F.4th 124, 127 n.7 (2d Cir. 2026).

9

We hold, unlike the district court, that this case presents a live controversy and that our prior mandate does not foreclose approval of the parties' chosen garnishment method. And because these holdings together dispose of the case as the parties have presented it to us, we reverse the district court's order without reaching any other issues.

### A. Article III's Case-or-Controversy Requirement

The Court has an independent and ongoing obligation to assure itself of its subject-matter jurisdiction, as delimited by Article III's case-or-controversy requirement. *Marquez v. Silver*, 96 F.4th 579, 582 (2d Cir. 2024); *see also Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 220 (2d Cir. 2018). That "limitation on our jurisdiction, and its focus on parties' stakes in the action, manifests in three distinct legal inquiries: standing, mootness, and ripeness." *Klein*, 906 F.3d at 221. "Standing doctrine evaluates a litigant's personal stake as of the outset of litigation," while "mootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation." *Id.* at 221 (cleaned up). Though no party addresses the issue now, the district court held that Greebel lacks standing to continue his challenge to the district court's garnishment procedure because his interest in the liquidated 401(k) funds has transferred to the Government by operation of the MVRA. We depart from the district court's jurisdictional holding for two reasons.

First, the district court erred in holding that intervening events—here, the liquidation of Greebel's accounts—rendered him without standing. Greebel no doubt had standing at the outset of

10

these garnishment proceedings to object to the seizure of his retirement funds. *See Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171 (2d Cir. 2025) (noting a loss in retirement funds as a cognizable Article III injury); *see also* 28 U.S.C. § 3205(c)(5) (providing for debtors to make objections during garnishment proceedings). What came next is not relevant for standing purposes, because "post-filing changes in circumstance cannot deprive a plaintiff"—or, here, an objector—"of standing." *Doe v. McDonald*, 128 F.4th 379, 385 (2d Cir. 2025). Instead, "[t]he consequences of losing a stake in ongoing litigation are determined . . . by asking whether the action has become *moot*." *Klein*, 906 F.3d at 220–21 (emphasis in original).

Second, though the district court did not consider whether the case has become moot, we hold that it has not. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation marks omitted). That occurs if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome[.]" *Doe*, 128 F.4th at 385 (quotation marks omitted). Greebel's appeal is not moot. Even accepting the district court's theory that a debtor loses his property interest in funds once they are liquidated but not yet distributed, Greebel retains an interest in the liquidated funds being used to satisfy his tax obligations, else he will personally incur a higher tax bill as a result. *See Clinton v. City of New York*, 524 U.S. 417, 432 (1998) (holding that the elimination of a statutory tax benefit constituted an economic injury sufficient to satisfy Article III's standing requirement). Because the Court retains the ability to enter "effectual relief" by directing the district court to

11

divert more of the liquidated 401(k) funds to satisfy Greebel's tax liability, the "dispute is still very much alive." *Chafin*, 568 U.S. at 172–73. Assured that this appeal presents a live controversy, we turn to its substance.

## B. The Mandate Rule

The district court rejected the parties' proposed stipulated orders of garnishment because the parties' preferred method of liquidating and distributing Greebel's assets, it thought, "was not an issue within the scope of the Second Circuit's remand[.]" App'x 496. In other words, the district court held that the parties' proposal violated what we call the "mandate rule," which is "a branch of the law-of-the-case doctrine that rigidly binds the district court, barring it from considering issues explicitly or implicitly decided on appeal." *United States v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024) (cleaned up). The mandate rule likewise prohibits a district court from reaching an issue that "was ripe for review at the time of an initial appeal but was nonetheless foregone, . . . unless the mandate can reasonably be understood as permitting it to do so." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). And to interpret our mandate, "a district court should look to both the specific dictates of the remand order as well as [its] broader spirit[.]" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation marks omitted).

Still, the rule "is generally limited to matters actually decided," rather than "mere recital of matters assumed for purposes of decision and dicta[.]" Wright & Miller, 18B Federal Prac. & Proc. § 4478.3 (3d ed. 2026). Moreover, as with the related law-of-the-case doctrine, "there is a narrow exception providing [for] reconsideration . . . in

12

compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *United States v. Valente*, 915 F.3d 916, 924 (2d Cir. 2019) (quotation marks omitted).

We agree with both parties (and disagree with the district court) that the Court's prior mandate did not explicitly or implicitly bar approval of the proposed stipulated orders of garnishment.[3] Recall the focus of Greebel's earlier appeal—whether ERISA, Section 72(t)'s early-withdrawal tax, or the 401(k) plans' terms *completely precluded* garnishment (or, as with the CCPA, *capped* it). *See Shkreli*, 47 F.4th at 68. We rejected all of these arguments, holding that the funds in Greebel's 401(k) accounts could be garnished under all applicable statutes, as well as the terms governing the accounts. *See id.* at 70–77. We did not decide, however, the *extent* of Greebel's property interest in the accounts, nor how it might be affected by all of the tax consequences of liquidating them. This is how we put it:

We agree with the Government's contention that the ten-

---

[3] At times, Greebel's brief suggests that the district court lacked authority to consider even whether the mandate rule applies, on the theory that 28 U.S.C. § 3003(b)(2) grants the Government exclusive authority to select the method of enforcing criminal restitution orders. The Government counters that the district court retained discretion to modify the proposed writs under 28 U.S.C. § 3013, which permits district courts to "make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under" the FDCPA. Because we hold ultimately that the mandate rule does not bar the parties' proposal and reverse for entry of the proposed stipulated writs, we do not reach the issue of the district court's discretion to review applications for writs of garnishment.

percent early withdrawal tax does not prevent it from garnishing the retirement funds, but the question remains as to whether the early withdrawal tax limits Greebel's right to his retirement funds and thus, the Government's parallel right of access. We agree with the Seventh Circuit's conclusion [that] the ten-percent early withdrawal tax does not preclude the Government from garnishing the defendant's retirement funds, but, if imposed, it would qualify as a limit on the defendant's right to payment of the balance of those funds. Accordingly, we remand so that the district court may consider these issues in the first instance.

Specifically, the district court should determine whether the Government's garnishment would trigger the ten-percent early withdrawal tax, and, if so, the amount subject to garnishment by the Government. To the extent the parties do not provide clarity on whether Greebel will be subject to the early withdrawal tax, the district court may wish to direct the liquidation of the retirement account and order the clerk to reserve a portion of the funds in escrow for the potential additional tax consequences of the early withdrawal.

*Id.* at 75–76 (citations and parenthetical text omitted). The district court erred in concluding that this prior mandate prevented approval of the parties' settlement.

First, we read nothing in the remand order to have "explicitly" required the district court to reject the parties' proposed allocation of the tax consequences of garnishing Greebel's 401(k) accounts. *Cf. Burrell*, 467 F.3d at 169 n.7. Given the early posture of the prior appeal, it is unsurprising that "the panel there had no occasion to

14

decide" the exact scope of Greebel's interest in his 401(k) funds nor, by extension, the scope of the Government's ability to garnish them. *Cf. United States v. Tenzer*, 213 F.3d 34, 42 (2d Cir. 2000). Though we did discuss Section 72(t)'s early withdrawal tax, we invited the district court to investigate in the first instance whether that tax would apply, and we did not discuss any other forms of tax liability at all. *See Shkreli*, 47 F.th at 75–76.[4] We thus disagree with the district court that we already "affirmed all aspects of [the] garnishment except for the share of funds that may need to be set aside for a potential [10 percent] early withdrawal tax" and that the "remand was limited to one specific tax issue[.]" App'x 494–95. Other potential issues with the garnishment—including who would pay the income tax consequences—were not before us in the prior appeal and remained undecided on remand.

---

[4] Our prior appeal *did* decide that Section 72(t)'s early withdrawal tax, "if imposed, would qualify as a limit on [Greebel's] right to payment of the balance of [the] funds." *Shkreli*, 47 F.4th at 76 (citing *United States v. Sayyed*, 862 F.3d 615, 619 (7th Cir. 2017)). The district court, purporting to apply this principle, directed that the clerk withhold 10 percent of the amount received from the garnishees to pay the tax owed under Section 72(t). This calculation likely overlooked that the clerk would receive only 80 percent of the liquidated funds from the garnishees (and so the district court effectively directed the withholding of 8, rather than 10, percent of the funds to pay the Section 72(t) tax). Moreover, the district court did not consider whether our prior conclusion that Section 72(t) limited the amount the Government could garnish from the 401(k) accounts might apply with equal force to the other taxes that would be generated by liquidation of the accounts. Because we hold ultimately that the district court erred in not approving the parties' agreed-upon proposal for allocating the tax consequences at issue in this case, we do not reach these potential issues.

To reach a contrary result, the district court purported to follow what it called the "procedure the Second Circuit prescribed" for determining the applicability and effect of Section 72(t)'s early withdrawal tax. *Id.* at 496. But though our opinion offered the district court one way of managing the uncertainty posed by the potential tax—liquidate the funds and reserve some with the Clerk in case the early withdrawal tax were assessed—we said merely that the district court "may wish" to follow that recommendation. *Shkreli*, 47 F.4th at 76. We did not require it, much less prohibit the litigation of all other issues that may arise in the course of garnishing Greebel's 401(k) accounts.

Second, and separate from the mandate's "specific dictates," its "broader spirit" did not imply a final answer to the tax liability question, either. *Cf. Ben Zvi*, 242 F.3d at 95 (quotation marks omitted). To whatever extent the district court inferred from our opinion that resolving the case required a definitive answer on Section 72(t), it should not have read our mandate to prevent the parties, garnishees, and victim from settling the question instead. Litigants may not, of course, "circumvent[] . . . lower-court compliance by stipulation," and thereby force the district court to take action expressly prohibited by this Court's mandate. *Slotkin, by Slotkin v. Citizens Cas. Co. of N.Y.*, 698 F.2d 154, 155 (2d Cir. 1983) (quotation marks omitted). That is especially true for settlements, like this one, which require judicial approval or adoption. *See* 28 U.S.C. § 3205(a) (granting district courts the authority to issue writs of garnishment). But in determining what is "express[ly]" prohibited on remand, *cf. Slotkin*, 698 F.2d at 155, district courts must keep in mind "the strong judicial policy in favor

16

of settlements," *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). That we often write appellate opinions on the assumption that the parties will continue to litigate, and include language in our remand orders to guide them on that path, does not mean that we necessarily intend to prohibit the amicable resolution of outstanding issues in a case.

In sum, we hold that our prior mandate in *Shkreli* neither explicitly nor implicitly prohibited the district court from entering the proposed stipulated orders of garnishment on remand. The district court's contrary conclusion was error.

## C. Remaining Issues

As is often the case, the parties' settlement reflects a negotiated resolution of many contested issues. Those issues include whether the Section 72(t) early withdrawal tax applies to the liquidation of a 401(k) account pursuant to a writ of garnishment and who must pay the income tax obligations arising from such a liquidation. The parties, garnishees, and victim do agree, though, that the settlement reached in this case is fair, non-collusive, and permitted by our mandate. On "the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief," *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (cleaned up), we elect not to wade into the many contested issues that informed the parties' settlement. We instead reverse the district court's April 10, 2025 order and remand for entry of the parties' proposed stipulated

orders of garnishment.[5]

## CONCLUSION

The years-long litigation over the Government's attempts to garnish Greebel's 401(k) accounts has raised a number of complicated legal issues, many novel to this Circuit. But this appeal requires we decide only two, on which there is no dispute. First, we hold that, just as Greebel had standing to challenge the garnishment of his accounts at the outset of this litigation, the case is not moot following the liquidation of those accounts. Second, we hold that this Court's prior mandate did not bar approval of the parties' proposed stipulated orders of garnishment, reached as a result of settlement and consented to by all interested parties. We thus **REVERSE** the April 10, 2025 order of the district court, and remand with instructions to approve the parties' proposed stipulated orders of garnishment.

---

[5] Greebel's motion to supplement the record is denied, as neither of his requested additions—oral argument audio from a prior appeal and briefing submitted in connection with a petition for certiorari—is necessary to correct a material omission or misstatement in the record or to resolve this appeal. *See United States v. Schulz*, 517 F.3d 606, 608 (2d Cir. 2008); Fed. R. App. P. 10(e)(2).